UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AYESHA W., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 6:20-cv-6827-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Ayesha W. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 15).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 12, 14. No further briefing was filed. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 14) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on April 19, 2017, alleging disability beginning January 4, 2017 (the disability onset date), due to: (1) extreme lower back pain; (2) degenerative osteoarthritis in both feet; (3) arthritis in both hips; (4) plantar fasciitis; (5) major depressive disorder; (6) PTSD; (7) severe migraines; (8) asthma; (9) carpal tunnel

syndrome; and (10) anxiety. Transcript ("Tr.") 169-74, 189. The claims were denied initially on July 7, 2017, after which Plaintiff requested a hearing. Tr. 12. On August 6, 2019, Administrative Law Judge Michael Devlin (the "ALJ") conducted a hearing in Rochester, New York. *Id*. Plaintiff appeared and testified at the hearing and was represented by Jeffrey Valentine, an attorney. *Id*. Sakinah Malik, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on September 20, 2019, finding that Plaintiff was not disabled. Tr. 12-24. On August 11, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's September 20, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C.  § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

3

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his September 20, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.

2. The claimant has not engaged in substantial gainful activity since January 4, 2017, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar degenerative disc disease; osteoarthritis affecting both hips and feet; bilateral carpal tunnel syndrome; migraines; asthma; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder ("PTSD"); and cannabis use disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[1] except the claimant can occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk up to two hours in an eight hour day; sit about six hours in an eight hour day; occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; frequently handle and finger bilaterally; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; understand, remember, and carry out simple instructions and tasks; frequently interact with co-workers and supervisors; frequent contact with the general public; able to work in a low stress work environment (i.e. no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc.); and is able to consistently maintain concentration and focus for up to two hours at a time.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 20, 1984 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 4, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 12-24.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on April 19, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 24. The ALJ also determined that based on the application for supplemental security benefits protectively filed on April 19, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id.*

## ANALYSIS

Plaintiff asserts two points of error. Plaintiff first argues that the ALJ's physical RFC is not supported by substantial evidence because the ALJ improperly relied on the opinion of consultative internal medicine examiner Harbinder Toor, M.D. ("Dr. Toor"). *See* ECF No. 12-1 at 1, 10-14. Specifically, Plaintiff argues that Dr. Toor's opinion was too vague to formulate a sedentary RFC; the ALJ failed to incorporate Dr. Toor's moderate limitation on prolonged sitting; and the ALJ included no accommodation for Dr. Toor's limitations related to pain. *See id*. Next, Plaintiff argues that the ALJ erred by finding Plaintiff's gastritis non severe at step two, and by failing to consider the impact of that impairment throughout the balance of the sequential evaluation, including at steps four and five. *See id*. at 14-16.

In response, the Commissioner argues that the ALJ properly evaluated the totality of the relevant record evidence and exercised his discretion in resolving the evidentiary conflicts in the record to reach a well-supported RFC for a full range of sedentary work with additional postural,

manipulative and environmental limitations. *See* ECF No. 14-1 at 12-18. Additionally, argues the Commissioner, the ALJ properly relied on the opinion of Dr. Toor in assessing an RFC for sedentary work. *See id*. at 18-24. Finally, the Commissioner argues that the ALJ properly found that Plaintiff's abdominal impairment was a non-severe impairment at step two and correctly did not include additional exertional or non-exertional physical limitations in the RFC due to this impairment. *See id*. at 24-28.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly considered the medical and other evidence of record and reasonably found that Plaintiff was capable of performing sedentary work with some limitations. The ALJ's finding was supported by objective medical evidence generally showing largely unremarkable clinical findings and conservative treatment, as well as evidence indicating that Plaintiff had a limited, but not insignificant, daily activity level. Most notably, the ALJ appropriately evaluated Dr. Toor's opinion and specifically accounted for Dr. Toor's stated moderate limitations in prolonged sitting, as well as Dr. Toor's assessment of Plaintiff's pain. In addition, the ALJ appropriately assessed Plaintiff's gastritis by considering it throughout the entire RFC analysis despite finding at step two that Plaintiff's gastritis was not severe.

On March 2, 2017, Plaintiff presented to the Emergency Department ("ED") of Rochester General Hospital ("RGH") complaining of "upper abdominal pain which started a couple months

ago." Tr. 276. She reported the pain radiated across her abdomen to her left flank/back. *Id*. On physical examination, she had tenderness in the upper right and left quadrant of the abdomen. Tr. 278. She was diagnosed with pancreatitis, enteritis, ulcer, and obstruction. *Id*.

On April 28, 2017, Plaintiff presented to family medicine practitioner Celeste Song, M.D. ("Dr. Song"), complaining of gastrointestinal pain. Tr. 290. Plaintiff was accompanied by a home health care manager. *Id*. She reported the pain had been happening for several years but significantly worsened in the past couple of weeks.  *Id*. She also reported that she had not been seen by a doctor in several years other than visiting the ED "once in the last year for GI issues." *Id*. On physical examination, she had epigastric tenderness radiating to her back, lower upper quadrant tenderness, mild right upper quadrant tenderness to palpation, and left lower quadrant tenderness to palpation. Tr. 291. She was noted to have history of gastrointestinal ulcer, hypertension, and obesity. *Id*. She was diagnosed with duodenal ulcer and esophageal stricture and referred to gastroenterology. *Id*.

On June 5, 2017, Plaintiff was seen in the gastroenterology clinic at University of Rochester Medical Center ("URMC") for treatment of abdominal pain. Tr. 350. She reported frequent loose stools associated with abdominal discomfort. Tr. 351, 355. A CT scan of the abdomen showed fluid attenuation tension suspicious for paraovarian cyst, hydrosalpinx, or peritoneal inclusion cyst, and an esophagram showed minimal narrowing of the distal esophagus with differential including esophageal reflux stricture. Tr. 354. On July 18, 2017, she underwent an endoscopy which showed two small linear erosions at the z-line of the esophagus and "[v]ery subtle stacked ring appearance." Tr. 365. She underwent a colonoscopy on the same date, which showed internal hemorrhoids. Tr. 368.

On June 27, 2017, Dr. Toor performed a consulting internal medicine examination at the request of the state agency. Tr. 297-301. Plaintiff reported pain in the lower back and hip,

degenerative arthritis, asthma, and anxiety, depression, and PTSD. Tr. 297. She also admitted that she continued to smoke cigarettes, and she was still using marijuana. Tr. 297-98. Dr. Toor noted that Plaintiff appeared in moderate pain and had less than full squat, but she showed a normal gait; was she able to walk on her heels and toes without difficulty; and she used no assistive devices. Tr. 298. Plaintiff reported activities of daily living as follows: "cooking varies;" she needs help with cooking and laundry; she shops once a week; showers, bathes, and dresses daily; and watches TV, reads, and goes out. *Id*.

Upon examination, Plaintiff was five feet eight inches tall and weighed 323 pounds; she showed normal findings of her eyes, atraumatic head, supple neck, and clear to auscultation of the lungs, and normal bowel sounds. Tr. 298-99. Although Plaintiff had limited range of motion of the lumbar spine and positive straight leg raise ("SLR") test, she also showed full range of motion of the cervical and thoracic spine, full range of motion and strength of the upper and lower extremities, stable joints, intact hand and finger dexterity, and full grip strength. Tr. 299. Plaintiff was diagnosed with a history of degenerative disc disease, asthma, migraines, PTSD, anxiety, and depression. Tr. 299-300. Dr. Toor opined that Plaintiff had "moderate limitation standing, walking, and sitting [f]or a long time;" "moderate to marked limitation bending, lifting, and carrying;" she should avoid irritants or other factors which could precipitate asthma; and "[m]igraines and pain can interfere with her routine." Tr. 300.

Also on June 27, 2017, Adam Brownfeld, Ph.D. ("Dr. Brownfeld"), performed a consulting psychiatric evaluation at the request of the state agency. Tr. 302-06. Plaintiff stated she had no history of psychiatric hospitalization; she had outpatient mental health services sometime between five to ten years ago; and she has no current treatment. Tr. 302. Plaintiff reported being very sensitive, crying easily, sad moods, hopelessness, loss of usual interest, worthlessness, diminished self-esteem, diminished sense of pleasure, social withdrawal, excessive worrying, nightmares,

flashback, and panic attacks when around crowds of people. *Id*. She denied symptoms of mania, thought disorder, and cognitive deficits. *Id*.

Upon examination, Plaintiff was cooperative; showed adequate presentation; was well groomed; had normal posture and behavior; and exhibited appropriate eye contact. Tr. 303. She also showed fluent and clear speech; exhibited coherent and goal-directed thought processes with no evidence of hallucinations, delusions, or paranoia; she had euthymic mood; demonstrated intact memory, attention; and concentration; and showed good insight and judgment. *Id*. Plaintiff reported that she is able to cook, dress, bathe, and groom herself, and her fiancé helps with cleaning, laundry, and shopping because of her pain. Tr. 304. In addition, she is able to manage her own money and take public transportation; she stated her hobby is hair styling, and she spends her days staying at home. *Id*. Dr. Brownfeld diagnosed PTSD, cannabis use disorder, and major depressive disorder, and osteoarthritis. Tr. 304-05. Dr. Brownfeld opined that Plaintiff had no evidence of limitation in understanding and performing simple and complex instructions; using reason and judgment to make work-related decisions; interacting with others; sustaining concentration and performing a task at a consistent pace; sustaining an ordinary routine and regular attendance at work; maintaining personal hygiene and appropriate attire; and being aware of hazards and taking precautions. Tr. 304. He opined that she was "moderately limited in regulating emotions, controlling behavior, and maintaining well-being." *Id*.

Plaintiff presented to Dr. Song on July 24, 2017, after witnessing a shooting near her mother's house. Tr. 771.  She reported past trauma of sexual abuse as a young child. *Id*. She had previously been prescribed Zoloft and Prozac, which she reported did not help. *Id*. On mental status examination, Plaintiff was well-kempt and casually dressed; her affect was tearful at times; she had good eye contact and no motor tics; and her speech was appropriate. Tr. 772. She was

diagnosed with a severe episode of recurrent major depressive disorder, without psychotic features, generalized anxiety disorder, sexual abuse, and PTSD. Tr. 772-73.

On August 22, 2017, Plaintiff was treated by Carolyn Braddock, NP ("Ms. Braddock"), for follow-up of her foot pain and because her "kidneys [were] bother[ing] her." Tr. 799. She also complained of urinary frequency and dysuria. *Id*. Plaintiff reported she was seeing a podiatrist for her foot pain; surgery had been recommended, but Plaintiff wanted a second opinion. *Id*. Plaintiff had a scheduled appointment for an annual exam with Dr. Song the following day. On examination, she had an adnexal mass on the left side of her pelvis, tender uterus, and tenderness of the left adnexa or uterine enlargement. Tr. 825. She was assessed with bulky or enlarged uterus and left adnexal tenderness for which an ultrasound was recommended. Tr. 825-26.

On September 14, 2017, Plaintiff was seen by Nadine Grove, NP ("Ms. Grove"), complaining of migraine headaches; she also needed a DSS form completed. Tr. 893. She reported intermittent migraines with multiple triggers including light and electronic devices, with symptoms including light sensitivity, nausea, and sweating. *Id*. She also reported back pain and pain in her hips and feet. *Id*.

On September 16, 2017, Plaintiff presented to David Ciufo, M.D. ("Dr. Ciufo"), in the orthopedics clinic, for treatment of bilateral foot pain. Tr. 398. A podiatrist had recommended surgery, and Plaintiff sought a second opinion. *Id*. She was assessed with "neuropathic pain secondary to overuse in the setting of planovalgus deformity and midfoot arthritis." *Id*. On examination, she had mid dorsal swelling of the bilateral lower extremities and tenderness to palpation at the dorsal midfoot and with first tarsal metatarsal motion. Tr. 400. Bilateral foot x-rays showed pes planus and midfoot arthrosis. Tr. 401.

Plaintiff saw Dr. Song on September 20, 2017, complaining of continued migraines for which prescribed medication was not working; however, she reported her mood had improved

somewhat since taking medication. Tr. 915. Plaintiff was well-kept and casually dressed; she had good eye contact and no motor tics; and her speech was appropriate. Tr. 916. She had tearful affect at the beginning of the appointment but calmed over the course of the appointment. *Id*.

On April 17, 2018, Plaintiff was seen at the ER of RGH for complaints of epigastric pain. Tr. 665. She complained of severe right upper quadrant and epigastric pain radiating to her back, much worse after eating; she also reported soft stools without evidence of melena. *Id*. On examination, she had tenderness in the upper right quadrant and epigastric area, and positive Murphy's sign.[2] Tr. 667. Plaintiff had differential diagnoses of "pancreatitis, gastritis, PUD, cholecystitis, cholelithiasis, choledocholithiasis, esophagitis, ectopic pregnancy, dehydration, and electrolyte abnormality." *Id*.

On September 21, 2018, Plaintiff presented to the URMC ED, complaining of chronic pelvic and abdominal pain that had become worse over the past several days. Tr. 411. Ultrasound showed evidence of ovarian cysts. *Id*. Plaintiff's pain improved significantly with IV pain administration. *Id*. Differential diagnoses included: "ovarian cyst, bacterial vaginosis, sexually transmitted infections/PID, [and] ovarian torsion." *Id*.

On December 5, 2018, Plaintiff presented to the RGH ED with epigastric abdominal pain. Tr. 660. She complained of belching and nausea over the past few weeks, with one episode of vomiting prior to her visit. *Id*. She also reported mild constipation over the last few weeks. *Id*. On examination, she had epigastric and left upper quadrant tenderness. Tr. 662. Lab work was "unremarkable," and Plaintiff's pain improved after a "round of GI cocktail and Pepcid." Tr. 663.

On December 10, 2018, Plaintiff was seen by Lauren Perlis, M.D. ("Dr. Perlis"), complaining of pelvic pain and abdominal pain.  Tr. 1032. She reported stomach soreness,

---

[2] Murphy's sign is a clinical test used in evaluating patients with acute cholecystitis. If pain with inspiratory arrest occurs when the inflamed gallbladder comes into contact with the examiner's hand, the patient has a positive Murphy's sign. *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1183442.

constipation, and severe pain with bowel movements. *Id*. On examination, she had a small mass palpable in the lower left quadrant of the abdomen at the level of the anterior superior iliac spine. Tr. 1033. She was noted to have an adnexal cyst due for monitoring by ultrasound. *Id*.

On March 29, 2019, Plaintiff presented to Irvin Oh, M.D. ("Dr. Oh"), at the URMC orthopedics clinic, for a follow-up evaluation of her bilateral foot pain. Tr. 453. Plaintiff reported she continued to have pain, as well as swelling. *Id*. Upon examination, Plaintiff had pes planovalgus deformity; valgus knee alignment; forefoot varus and tenderness around the posterior tip of her medial malleolus around the region of the posterior tibialis tendon. *Id*. She was unable to perform single limb heel-rise on her bilateral feet, and her "PTT power examination [was] also weak." *Id*. Plaintiff reported that bilateral Lyncos and Gabapentin did not relieve much of her pain. *Id*. Dr. Oh opined that most of Plaintiff's pain appeared to be nerve related, and she was prescribed Spencos orthotics and a TENS unit for pain. *Id*.

On June 7, 2019, Plaintiff had a follow-up visit with Jessica Kohring, M.D. ("Dr. Kohring"), at the URMC orthopedics clinic. Tr. 455. Plaintiff reported that Gabapentin and the TENS unit had not helped, but the orthotics had helped "a bit." *Id*. She continued to be frustrated with foot pain. *Id*.

On July 23, 2019, Plaintiff presented to the RGH ED, complaining of diarrhea and chest tightness for approximately one week. Tr. 655. The treatment notes reflect that Plaintiff was reassessed multiple times and "had no acute decompensations or acute complaints" while in the ED. Tr. 658. Although, she stated that she continued to have discomfort in her abdomen, she was "easily distractible with no appreciable tenderness," and she was requesting food. *Id*. Plaintiff was advised to use over-the-counter Tylenol and Imodium and was discharged home. *Id*.

As noted above, Plaintiff challenges the ALJ's RFC analysis and the overall conclusion that Plaintiff was not disabled, arguing that the ALJ erred in evaluating Dr. Toor's opinion and

erred in finding Plaintiff's gastritis to be a non-severe impairment. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence

available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claim on April 19, 2017, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC assessment. *See* 20 C.F.R. §§ 404.1527, 416.927. First, the ALJ properly assessed the persuasiveness of Dr. Toor's opinion. The ALJ found Dr. Toor's opinions to be persuasive because they were generally consistent with, and supported by, the medical evidence of record. Tr. 22. In particular, Dr. Toor's opinions were consistent with his own physical examination, which showed that Plaintiff had a normal gait and stance, could walk on heels and toes without difficulty, but had a squat 20% of the full. Tr. 298. Although Plaintiff had a limited range of motion in the lumbar spine and positive straight leg raises, she also showed full range of motion of the cervical and thoracic spine, full range of motion and strength of the upper and lower

extremities, stable joints, intact hand and finger dexterity, and full grip strength. Tr. 299. Plaintiff also had a normal examination of her chest and lungs, which were clear to auscultation. *Id*.

Dr. Toor's opinions were also supported by the medical evidence in the record. The ALJ noted that physical examinations from 2018 and 2019 show that, other than bilateral pelvic tenderness or abdominal tenderness, Plaintiff generally had unremarkable findings with normal range of motion of her musculoskeletal system, normal muscle tone and coordination, and was alert and oriented. Tr. 21, 401, 429, 662, 664, 667, 671. Another examination from June 7, 2019 showed that Plaintiff was in no apparent distress, but also showed a slow gait, significant pes planus, mild midfoot swelling, and tenderness over the dorsal midfoot, full motor strength of the ankle, and full range of motion of the musculoskeletal system. Tr. 21, 455. All of these clinical findings and observations were commensurate with an RFC for sedentary work with non-exertional postural, manipulative and environmental limitations, as the ALJ found. Tr. 18.

Plaintiff asserts that Dr. Toor's opinion was too vague to support a residual functional capacity without any further explanation. *See* ECF No. 12-1 at 11. Contrary to Plaintiff's argument, a medical source's use of "mild" or "moderate" when describing work-related limitations does not automatically render the assessment so vague that it is useless without clarification. *See Lewis v. Colvin*, 548 F. App'x 675, 677-78 (2d Cir. December 17, 2013) (The Court agreed that the RFC assessment for a significant range of light work was supported by an assessment from a consultative examiner's of "mild limitations for prolonged sitting, standing, and walking," and direction that Lewis should avoid "heavy lifting, and carrying" and, in so doing, the Court rejected Lewis's argument that such assessment was impermissibly vague). In addition, many courts in this Circuit (including this Court) have found that "mild" or "moderate" limitations were consistent with the ability to perform light work. *See, e.g., Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (holding that a consulting physician's opinion that a claimant had "[m]ild to

moderate" limitations in "sitting for a long time, standing for a long time, walking for a long distance, pushing, pulling, or heavy lifting" was sufficient, coupled with the other evidence, to support the ALJ's RFC finding); *Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756 at *13, 14 (W.D.N.Y. Feb. 25, 2015) (finding that a medical opinion that a claimant was "moderately" limited in sitting, standing and walking was not inconsistent with the ALJ's RFC that plaintiff could sit, stand, and walk for six hours a day.); *Nelson v. Colvin*, No. 12–CV–1810, 2014 WL 1342964, *12 (E.D.N.Y. Mar. 31, 2014) (finding ALJ's RFC for light work was supported by doctor's assessment of "mild to moderate limitation for sitting, standing, walking, bending, and lifting weight on a continued basis"); *DeRosia v. Colvin*, No. 16-CV-6093, 2017 WL 4075622, at *20–21 (W.D.N.Y. Sept. 14, 2017) (Moderate to marked limitations for prolonged standing and walking was consistent with the ALJ's conclusion that the claimant could perform sedentary work).

Furthermore, the ALJ here did not solely rely on Dr. Toor's statement that Plaintiff had "moderate limitation standing, walking, and sitting [f]or a long time" and "moderate to marked limitation bending, lifting, and carrying" in formulating his RFC determination; rather, the ALJ also considered other evidence, including the examination conducted by Dr. Toor. As discussed above, Dr. Toor's opinions are consistent with his own examination and are supported by the medical evidence of the record. Moreover, the ALJ did not just rely on the opinions of Dr. Toor, but also appropriately considered the objective medical evidence, which generally showed examination results consistent with the ability to perform some work; Plaintiff's statements about her pain, which the ALJ observed were not fully supported by the objective medical evidence; and Plaintiff's limited but not insignificant daily activity level. Tr. 18-23. Because substantial evidence supports the ALJ's finding that Plaintiff had the RFC for a range of sedentary work with postural, manipulative and environmental limitations, Plaintiff's arguments are unavailing. Tr. 18-23.

Plaintiff also asserts that Dr. Toor's opinion of Plaintiff's moderate limitations "sitting [f]or a long time" are inconsistent with a sedentary RFC, because sedentary work requires an individual to be able to sit for six hours in an eight-hour workday. *See* ECF No. 12-1 at 12. However, limiting Plaintiff to prolonged sitting does not preclude sedentary work. *See Martin v. Astrue*, 337 F. App'x 87, 89-90 (2d Cir. 2009) (finding that substantial evidence, including opinions that Plaintiff had limitations for prolonged sitting, standing, and walking, supported an RFC for the full range of sedentary work); *see also Mitchell ex rel Mitchell v. Comm'r of Soc. Sec.*, 1:13-cv-1479 (LEK/TWD), 2015 WL 1505707, at *8 (N.D.N.Y. March 31, 2015) (opinions that claimants could not perform prolonged activities, including standing, walking, climbing, or bending, were consistent with RFCs for sedentary work; *Burdick v. Astrue*, 12-cv-6195, 2013 WL 3713417, *7 (W.D.N.Y. July 12, 2013) (opinion that plaintiff should avoid prolonged sitting and standing consistent with an RFC for sedentary work); *Funk v. Astrue*, 10-cv-602, 2012 WL 501017, at *3 (N.D.N.Y. Feb. 15, 2012) (rejecting plaintiff's argument that an opinion of "moderate limitations in prolonged sitting," would preclude sedentary work); *Johnston v. Astrue*, 07-cv-647, 2009 WL 1650415, at *4 (W.D.N.Y. June 12, 2009) (restrictions in prolonged standing do not preclude sedentary work).

Indeed, sedentary work involves at most a total of about two hours of walking and standing. *See* SSR 96-9p, 1996 WL 374185 (July 2, 1996). In addition, while sedentary work involves mostly sitting, morning, lunch, and afternoon breaks are contemplated at about two-hour intervals. *Id*.; *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("The regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."); *see also Carrol v. Colvin*, No. 13-CV-456, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014) (noting that several district courts have upheld an ALJ's decision that a claimant could

perform light or sedentary work even with moderate limitations in prolonged sitting or standing) (citations omitted); *Rodriguez v. Barnhart*, No. 01-cv-7373, 2002 WL 31307167, at *5 (S.D.N.Y. Oct. 15, 2002) ("The treating and consulting physicians opined that plaintiff was capable of sitting, standing, walking, lifting, carrying, and handling of objects with moderate limitations . . . These medical opinions were consistent with the ALJ's finding that Plaintiff was capable of performing sedentary work.").

Even assuming *arguendo* that the ALJ did not incorporate all of Dr. Toor's limitations, the ALJ makes his RFC determination based on the record as a whole. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Moreover, where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta*, 508 F. App'x at 56. Thus, when considering the medical evidence and record as a whole to formulate the RFC, an ALJ does not draw his own conclusions or base the RFC determination on his own lay opinion; instead, the ALJ considers "the

medical and other relevant evidence in the record in its totality to reach an RFC determination." *Curry v. Comm'r Soc. Sec.*, No. 20-1472, 2021 WL 1942331, *2 n.3 (2d Cir. May 14, 2021). As discussed extensively above, the ALJ did just that in this case.

Finally, Plaintiff asserts that the ALJ's statement that he accommodated Plaintiff's pain limitations in the RFC was "conclusory;" because, according to Plaintiff, the ALJ provided no limitations in the RFC that accommodated Dr. Toor's opinion that Plaintiff's routine would be disrupted due to pain. *See* ECF No. 12-1 at 13 (citing Tr. 22). However, this is incorrect—the ALJ accounted for pain limitations in the RFC, stating: "it is recognized that the claimant may experience some degree of pain and discomfort, particularly with physical exertion, which has been considered in limiting her to sedentary work." Tr. 22. Thus, the ALJ accounted for the possible interference in the routine by limiting Plaintiff to sedentary work, along with other postural restrictions in order to minimize her pain.

Plaintiff's contention that the ALJ erred in failing to consider limitations from Plaintiff's abdominal impairment when rendering the RFC, even though he determined this impairment was non-severe, is similarly meritless. At the second step of the sequential evaluation, an ALJ considers whether the claimant has at least one severe impairment or combination of impairments that meets the twelve-month durational requirement for establishing disability. *See* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1522(a) (defining "non-severe" impairments). If the claimant does not have any severe impairments, then the claimant is not disabled, and the sequential evaluation ends. *Id*. However, if the claimant has at least one severe impairment or combination of impairments, then the evaluation continues, and the ALJ considers all impairments and symptoms when evaluating RFC. *See* 20 C.F.R. § 404.1529, 404.1545(a)(2).

Furthermore, it is Plaintiff's burden to demonstrate that she has a severe impairment. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). The mere presence of an impairment, or that a person has been diagnosed and/or treated for an impairment is not, by itself, sufficient to render a condition severe. *Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013); *see Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 ((N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)) ("The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe."). Instead, a claimant must demonstrate an impairment that "significantly limits [his] physical or mental ability to perform basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

Here, substantial evidence supports the ALJ's determination that Plaintiff's gastritis was non-severe. For example, the ALJ observed that Plaintiff was assessed with gastritis, but found that the record was absent evidence of associated complications, periods of exacerbation, or treatments that exceeded conservative measures. Tr. 15. Specifically, the ALJ observed that treatment notes in 2017 indicated that Plaintiff had mild gastritis and had no current esophageal stricture. Tr. 15, 783. Accordingly, the ALJ reasonably found that Plaintiff's gastritis did not cause more than minimal limitations in Plaintiff's ability to perform basic work activities, and therefore, was non-severe. Tr. 15.

The record supports the ALJ's conclusion. The record shows that Plaintiff complained of abdominal pain in the epigastric region (Tr. 276, 290, 350, 408, 660, 665); however, numerous physical examinations (aside from showing tenderness and pain in various parts of the abdomen) otherwise showed normal examinations of the musculoskeletal and neurological systems (Tr. 278, 290, 411, 429, 662, 667, 671, 697, 707, 1033, 1041). Notably, in various examinations, including Dr. Toor's internal medicine consultative examination, Plaintiff's abdomen showed no tenderness,

no abdominal bruits, no hepatosplenomegaly or masses, and showed normal bowel sounds. Tr. 299, 352, 371, 382, 400, 476, 478-79, 550, 657. A March 2017 CT scan of the abdomen showed no acute inflammatory or obstructive process to explain Plaintiff's abdominal pain. Tr. 285. A July 2017 colonoscopy was also normal to the terminal ileum, with no evidence of neoplasia, diverticular disease, or mucosal abnormality. Tr. 368. While Plaintiff was prescribed medications (Tr. 285, 350-51, 662), there is no evidence of additional or more significant treatment. In July 2017, Plaintiff's gastritis was described as "mild," and continued to be described that way, including as recently as July 31, 2019, less than two months before the ALJ's decision. Tr. 783, 1082.

Even assuming *arguendo* that the ALJ erred at step two, where an ALJ proceeds past step two and considers the effects of all the claimant's impairments through the remainder of the sequential evaluation process, any error at step two is harmless. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (holding that the ALJ's failure to find two impairments "severe" at step two was harmless, because the ALJ considered them later in the evaluation process); *see also O'Connell v. Colvin*, 558 F. App'x 63, 64 (2d Cir. 2014) (holding that step two errors are harmless when the ALJ identifies other severe impairments and proceeds in the sequential evaluation process).

In fact, at step two, the ALJ specifically noted that he considered the combined effect of all of Plaintiff's impairments on her ability to function without regard to whether any such impairment, if considered separately, would be of sufficient severity. Tr. 15. Furthermore, the ALJ specifically observed that in March 2017, Plaintiff "presented to Rochester General Hospital for abdominal pain," but Plaintiff's physical examination "showed generally unremarkable findings with . . . a normal range of motion of her neck and musculoskeletal system." Tr. 19, 276, 278. The ALJ also noted that in 2018, Plaintiff's "physical examination showed that other than bilateral

pelvic tenderness or abdominal tenderness, she generally had unremarkable findings with normal range of motion of her musculoskeletal system, normal tone and coordination, and was alert and oriented." Tr. 21, 400, 429, 662, 664, 667, 671. The ALJ also considered that in July 2019, Plaintiff "presented to Rochester Regional Health for abdominal pain and coughing" but that "an examination showed the claimant sat in a chair with no acute distress and showed normal strength." Tr. 21, 655, 657.

Plaintiff also complains that the ALJ's decision was not supported by substantial evidence because he failed to consider Plaintiff's need for bathroom breaks in the RFC. *See* ECF No. 12-1 at 14-16. Although Plaintiff testified that she needed to use a bathroom for an hour once every one to two hours (*see* Tr. 40), the need for bathroom breaks to the extent Plaintiff contends is not supported by the record. In treatment notes describing her symptoms of gastritis, diarrhea and/or loose stools was reported on only a few occasions. *See, e.g.*, Tr. 351 (April 2018); 354-55 (August 2017); 655 (July 2019). On other occasions, Plaintiff complained of constipation rather than diarrhea. *See, e.g.*, Tr. 660, 1032. Furthermore, nothing in the record documented that Plaintiff routinely experienced the frequency and length of time of bathroom trips as she testified.

Ultimately, it is Plaintiff who bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.). Plaintiff here failed to meet her burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing

*Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and the objective findings, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE